UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| STONEWAY CAPITAL CORPORATION, a Canadian Corporation, | ) ) ) | |
| Plaintiff, | ) ) | CASE NO.: 1:19-cv-11355-GBD-SLC |
| v. | ) ) | |
| SIEMENS ENERGY, INC., a Delaware Corporation, | ) ) ) | |
| Defendant. | ) ) ) | |

**SIEMENS ENERGY, INC.'S REPLY IN SUPPORT OF
ORDER TO SHOW CAUSE**

**I.  SIEMENS HAS SHOWN THAT THE ARBITRATION WILL BE RENDERED INEFFECTUAL WITHOUT AN ATTACHMENT.**

**a. Stoneway's Admission That It Drained The Payment Account And Its Failure To Disclose Its Net Worth Is A Major Concern.**

Stoneway admitted in its response papers that it drained the Payment Account at some unknown prior date. (Doc. 69-1 ¶ 40). This is a major concern and authorizes the Court to enter the order of attachment Siemens requests. *The sole purpose of the Payment Account was to secure Stoneway's payment obligations to Siemens under the Contract*—the Payment Account "will . . . *solely* be used for payments under the Contract." (Doc. S-17 § 12.3) (emphasis added). There is simply no other permissible use of the funds that were supposed to be deposited *and maintained* in the Payment Account. The Payment Account should currently have the "full Contract Price," i.e., approximately $152.8 million (Doc. 65-1 ¶ 12), less payments made to date of approximately $22 million (down payments paid by Stoneway on notice to proceed (per payment schedule, Doc. 65-4), and the $10 million partial payment made by Stoneway on October 31, 2019 (Doc. 65-1 ¶ 28.)). In other words, the Payment Account should currently have

1

a balance of approximately $130 million that is to be used for the sole purpose of paying amounts owed to Siemens under the Contract (including any termination fees). Instead, it is now zero per Stoneway's admission that it diverted Siemens' security to other purposes.

The fact that Stoneway has impaired this contractual security alone is cause for an attachment. One factor the Court may consider in the "rendered ineffectual" prong of its analysis is a stated or indicated intention to dispose of assets that could be used to satisfy a future judgment or arbitration award. *Plenty v. Randell*, No. 95 Civ. 5850 (PKL), 1995 WL 694661, at *1 (S.D.N.Y. Nov. 22, 1995). Here it is even worse – Stoneway admits it has already drained the account, exactly as Siemens feared. It is undisputed.

Stoneway is a private company for which reliable financial information is difficult to discover in a pre-judgment setting, and the fact that Stoneway utterly refused to disclose its current net worth to the Court is telling. Stoneway's witness testified that as of December 2019 (more than a month ago), it allegedly had $829 million in *assets*, but pointedly refused to tell the Court Stoneway's current assets or, more importantly, how those assets were encumbered by Stoneway's liabilities (Doc. 69-1 ¶ 41). The Court should ask itself:  why would Stoneway ever come to a hearing such as this without telling the Court its *net worth* and producing its actual balance sheet? That would have answered the question, but instead Stoneway took a dodge.  The Court should be very concerned about Stoneway's net worth and ability to respond to an arbitration award, as is Siemens.

When combined with Stoneway's own stated concerns about the possibility of bankruptcy (Doc. 53 at 1, 5-6, 15), Stoneway's failure to disclose its net worth and its admission that it drained the Payment Account demonstrates "the *possibility* . . . that absent the attachment being requested, the ultimate arbitration award would be severely compromised," which

"satisf[ies] the petitioner's burden." *Mishcon de Reya New York LLP*, 2011 WL 6957595, at *8 (emphasis added). Note that the *Mischon* court focused on the "possibility" that the ultimate arbitration award would be compromised.

### b. Stoneway Misconstrues The Applicable Legal Standard.

Siemens has raised a substantial concern that an arbitration award in its favor would be ineffectual without an attachment. Stoneway misconstrues the law—Siemens need not show a likelihood of Stoneway's insolvency, but only the suggestion. *See Swift Splash v. Rice Corp*, No. 10 Civ. 6448 (JGK), 2010 WL 3767131, *2 (S.D.N.Y. Nov. 22, 1995) (acknowledging that potential insolvency can show a need for an attachment); *SiVault Sys., Inc. v. WonderNet, Ltd.*, No. 05 Civ. 0890 (RWS), 2005 WL 681457, at *4 (S.D.N.Y. Mar. 25, 2005) ("On the record which suggests [the defendant's] potential insolvency, [the plaintiff] has established that a ground for an attachment exists insofar as the award to which [the plaintiff] may be entitled *may* be rendered ineffectual without the attachment sought.") (emphasis added). Siemens need not demonstrate any evidence of fraud or intent to transfer assets. *See Mishcon de Reya New York LLP.*, 2011 WL 6957595, at *9 (awarding an attachment despite finding that movant had failed to show any intent of respondent to transfer assets to avoid paying a judgment).

### c. Stoneway's Attempts To Distinguish Siemens' Case Law Misses The Point.

*Habitations Ltd. v. BKL Realty Sales Corp.*, 554 N.Y.S.2d 117, 118 (N.Y. App. Div. 1990), and *Plenty v. Randell*, No. 95 Civ. 5850 (PKL), 1995 WL 694661, at *1 (S.D.N.Y. Nov. 22, 1995), were both cited to illustrate the sort of financial factors and indications that a court may consider in making a determination that an arbitration award may be compromised without an attachment— factors that are relevant and present here. Siemens used *Mishcon de Reya New York LLP*, 2011 WL 695795, to illustrate how the elements necessary to secure an attachment may be examined and applied to the current factual scenario. *SiVault Sys., Inc. v. WonderNet, Ltd.*, No. 05 Civ. 0890

(RWS), 2005 WL 681457, at *4 (S.D.N.Y. Mar. 25, 2005), was cited to establish that an applicant for an attachment need only show the *possibility*, rather than the *certainty*, of insolvency, an important fact here. Finally, *Deutsche Mex. Holdings S.A.R.L. v. Accendo Banco, S.A.*, No. 19 Civ. 8692 (AKH), 2019 WL 5257995, at *7 (S.D.N.Y. Oct. 17, 2019), illustrated that a respondent's fear that it will be unable to "sustain operations" is probative and may be considered by a court in awarding equitable relief.

That these cases dealt with different facts does not lessen the applicability of the legal principles they state. Siemens has shown the Court how and why it satisfies the legal requirements for the Court to grant the requested attachment.

## II. STONEWAY'S NEW ARGUMENT THAT IT ALLEGEDLY "VERBALLY" DISPUTED SIEMENS' INVOICES IS IRRELEVANT AND DOES NOT CHANGE SIEMENS' LIKELIHOOD OF SUCCESS

Stoneway, *as a matter of law*, cannot dispute that it owes the unpaid invoiced amounts to Siemens. Until yesterday, February 11, 2020, Stoneway had not claimed that it ever rejected or disputed any of Siemens' invoices within 5 business days (and Siemens showed, through competent admissible evidence, that Stoneway had never so disputed or rejected Siemens' invoices (Doc. 65-1 ¶ 18)). This was true despite two verified complaints and two briefs that Stoneway filed. Then, in its response to Siemens' order to show cause filed February 11, 2020, Stoneway claimed for the first time that it "verbally" disputed Siemens' invoices within 5 business days. (Doc. 69-1 ¶ 33). Stoneway, of course, gave no details on such "verbal" statements—who supposedly made them, to whom, when or what was said.

Even assuming Stoneway's affidavit testimony was true, it does not matter to Siemens' likelihood of success on the merits in this case. The Contract required Stoneway to dispute any invoice *in writing* within 5 business days of receipt and state, *in writing*, any basis it had for contending that Siemens did not achieve the relevant construction milestones or earn the

4

milestone payment. (Doc. S-17 § 12.2.) If Stoneway did not do so, as all the evidence before the Court shows, the invoice became "immediately due" and payable within 30 days of when it was received." (*Id.*) Stoneway has failed to offer *any evidence* demonstrating that it disputed any of the invoices *in writing* within 5 business days—or at all any time thereafter in response to Siemens' multiple default, suspension and termination notices given to Stoneway and BONYM (the Collateral Agent for the Bondholders). Siemens, on the other hand, has offered evidence showing that Stoneway never disputed the invoices (verbally or in writing) within the requisite 5-day period, or ever. (Doc. 65-1 ¶ 18.) Yet Stoneway failed to pay the undisputed invoices. (*Id.*) Thus, as a matter of law, Stoneway failed to timely dispute the invoices at issue, and they are all due and payable and cannot be the subject of any dispute now.

  Article 29.7 of the Contract provides that New York law governs. (Doc. S-17 Art. 29.7.) New York courts strictly enforce contractual notice provisions such as Stoneway's requirement to dispute the invoices within 5 business days. Where a party fails to comply with such provisions, its resulting claims are barred as a matter of law. In *S & H Bldg. Material Corp. v. Benny Riven*, 176 A.D.2d 715, 716, 574 N.Y.S.2d 799, 799 (2d Dept. 1991), the defendant received materials from the plaintiff but failed to pay for them. After the plaintiff sought to collect the overdue payments, the defendant contended—for the first time in its answer—that some of the materials were defective. *Id.* The court rejected this argument and ruled for plaintiff *as a matter of law*, reasoning that the contract required the defendant to make any claims against the plaintiff within 5 days after the date of purchase, and the relevant invoices required the defendant to notify the plaintiff that the materials delivered did not conform to the invoice description within 48 hours of the delivery. *Id.* at 799-800, 717. *See also, e.g.*, *Westinghouse Elec. Corp. v. New York City Transit Auth.*, 735 F. Supp. 1205, 1225 (S.D.N.Y. 1990) (holding

where the plaintiff's contract for the installation of equipment at subway stations required the plaintiff to give the defendant notice of extra work entitling it to additional compensation within 5 days of being required to perform the work, if the plaintiff failed to do so, its claim for additional compensation for extra work was barred); *Elec. Contractors, Inc. v. Pike Co.*, No. 3:11-CV-01449 JAM, 2015 WL 3453348, at *13 (D. Conn. May 29, 2015) (holding that where a contract expressly required any claim for extra compensation to be made in writing within 3 days of the event giving rise to the claim that the plaintiff's failure to give notice pursuant to the contractual requirements precluded its claims).

There is no dispute that Stoneway failed to contest any of Siemens' invoices, in writing, according to the terms of the Contract. Any "verbal dispute" Stoneway attempts to assert now fails as a matter of law, and does not lessen Siemens' strong likelihood of success on the merits—indeed, success as a matter of law.

### III. SIEMENS PROVIDED UNDISPUTED EVIDENCE THAT IT MET CONTRACT MILESTONES

Contrary to Stoneway's assertion, Siemens provided competent evidence to the Court in its supporting papers that Siemens achieved the various Contract milestones and then invoiced for them. Siemens submitted to the court an affidavit from its Project Director, Thomas Bundesmann, testifying to Siemens' milestones achieved and invoiced to Stoneway. (Doc. 65-1 ¶ 16–17.) Stoneway's belated allegations, made for the first time in its response papers, that Siemens did not achieve certain milestones likewise do not change Siemens' likelihood of success on the merits. If during construction Stoneway felt Siemens had failed to meet a milestone, it had a contractual obligation to state this *in writing* within five business days of receipt of the particular invoice. (Doc. S-17 § 12.2.) Failure to do so rendered the invoice due and payable as a matter of law. *Id. See also S & H Bldg. Material Corp.*, 176 A.D.2d at 716.

## IV. THE OTHER STONEWAY-SIEMENS PROJECTS HAVE NOTHING TO DO WITH THE REQUESTED ATTACHMENT IN THIS CASE

Stoneway's response papers mention several times that it paid Siemens several hundred million dollars since 2017. That is all well and good, but it does not change the fact that Stoneway has failed, without valid excuse, to pay to Siemens more than $25 million it owes on the Project that is at issue in this case. What is important here is that (1) Siemens performed valuable work for Stoneway on the Project at issue in this case, (2) Siemens invoiced Stoneway for the work, (3) Stoneway never disputed or rejected Siemens' invoices as required by the Contract, (4) Stoneway failed to pay Siemens, and (5) now Stoneway has admitted that it has bankruptcy concerns and has *drained the Payment Account of which the sole purpose was providing security for payments owed to Siemens under the Contract at issue*. The above facts are *not disputed*. The payments made under different contracts for different projects on different power plants simply have no bearing on the relief Siemens seeks in its motion.

Likewise, Stoneway's claimed setoffs do not allow Stoneway to avoid an otherwise permissible order of attachment. In its response papers, Stoneway ignored the law cited by Siemens that shows that the Court "need examine only the amount of the counterclaims that [Siemens] *concedes are just*." *Bank Leumi Tr. Co. v. Istim, Inc.*, 892 F. Supp. 478, 482 (S.D.N.Y. 1995) (emphasis added.) Here, that is none, as Stoneway's witness admitted (Doc. 69-1 ¶ 23 (testifying that Siemens does not "acknowledge any financial responsibility.").) Further, Stoneway has not stated a cause of action on any of the various issues it calls "claims"; it has not provided *evidence* showing the elements for a breach of any contract, citation to a provision of a contract breached, or anything. It has merely provided an allegation or list of supposed complaints that Stoneway has not shown rise to the level of a breach of contract or "claim." If a party could merely list a series of complaints and attach an arbitrary large number to it without

any proof establishing a cause of action or a legally-cognizable calculation of damages, then New York's attachment laws would always be frustrated by mere hand-waving complaints. Finally, the Contract specifically states that "set off rights will not apply to matters that are officially disputed under the terms of this Contract until the dispute is resolved," (Doc. S-17 § 29.21) and Stoneway admits that it elected to not raise its "claims" until after Siemens was done with its work (Doc. 69-1 ¶ 23).

## V. CONCLUSION: SIEMENS IS ENTITLED TO AN ORDER OF ATTACHMENT

Siemens has shown all elements that authorize this Court to enter an order of attachment in aid of arbitration: (1) there is a cause of action (supported by clear, admissible evidence and citation to contract provisions breached); (2) it is probable that Siemens will succeed on the merits (indeed, as a matter of law); (3) the award to which Siemens is entitled may be rendered ineffectual without such provisional relief (Stoneway has diverted the funds that were to be held in a specific account as security for Siemens); and (4) the amount demanded from Stoneway exceeds all counterclaims known to the petitioner (and indeed, Contract Article 29.21 provides that setoff of unproven, unliquidated, disputed "claims" are not to be considered). *Mishcon de Reya New York LLP v. Grail Semiconductor, Inc.*, No. 11 Civ. 04971 (RJH), 2011 WL 6957595, at *3 (S.D.N.Y. Dec. 28, 2011.)

If the Court is not inclined to grant the relief requested by Siemens at this time due to a factual dispute regarding Stoneway's ability to satisfy an arbitration award, Siemens respectfully requests that the Court either (a) provide Siemens an opportunity to take limited discovery regarding Stoneway's financial position and/or present additional evidence at an evidentiary hearing; or (b) deny the motion without prejudice to Siemens' right to bring an application for interim measures to the ICC.

Dated: February 12, 2020

                              EVERSHEDS SUTHERLAND (US) LLP

                              /s/ Lee C. Davis
                              Lee C. Davis (admitted *Pro Hac Vice*)
                              Jesse W. Lincoln (admitted *Pro Hac Vice*)
                              Kamryn M. Deegan (admitted *Pro Hac Vice*)
                              999 Peachtree Street, NE, Suite 2300
                              Atlanta, Georgia 30309-3996
                              leedavis@eversheds-sutherland.com
                              jesselincoln@eversheds-sutherland.com
                              kamryndeegan@eversheds-sutherland.com
                              *Attorneys for Defendant, Siemens Energy, Inc.*